UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
CCM TOURING LLC, :
:
                    Plaintiff, :
: 23-CV-7116 (VSB)
     - against - :
: **OPINION & ORDER**
:
MOONBUG ENTERTAINMENT LTD, :
:
                    Defendant. :
:
------------------------------------------------------------X

Appearances:

Sophia Sorella Sofferman
NTSS Law PLLC
Miramar, FL

James George Sammataro
Brendan Everman
Pryor Cashman LLP
Miami, FL
*Counsel for Plaintiff*

Christopher LoBosco
Morrison Cohen LLP
New York, NY

Carla M. Wirtschafter
Kasey Curtis
Reed Smith LLP
Los Angeles, CA

Jordan W. Siev
Charles Hyun
Reed Smith LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me are Plaintiff CCM Touring LLC's ("CCM" or "Plaintiff") motions for a preliminary injunction, (Doc. 64), and a temporary restraining order, (Doc. 80), seeking to enjoin Defendant Moonbug Entertainment Ltd. ("Moonbug" or "Defendant") from licensing or otherwise granting to any third parties the rights to produce, market, promote, or present a live ticketed show based on the children's animated series CoComelon in the United States, Canada, or Argentina. For the reasons stated on the record during the February 21, 2025 conference with the parties, as well as the reasons set out in this Opinion & Order, Plaintiff's motion for a temporary restraining order ("TRO") is hereby DENIED. For the reasons set out in this Opinion & Order, Plaintiff's motion for a preliminary injunction is hereby DENIED.

I. **Factual Background & Procedural History**

Defendant Moonbug is a global children's media company that acquired all the intellectual property rights to CoComelon, one of the most popular children's shows in the world, in 2020. (Doc. 32 ("Am. Compl.") ¶¶ 19, 23; *see also* Doc. 85 ("Def's Opp'n") at 4.) On February 5, 2021, Moonbug and Plaintiff CCM executed a contract titled Exclusive Live Tour and Merchandise Services and License Agreement ("License Agreement"), which granted an exclusive license to CCM to present live touring shows based upon CoComelon. (Am Compl., Ex. 1.) The License Agreement reserved to Moonbug the right to present "non-ticketed costume character promotional experiences outside of the CoComelon Tour." (*Id.* ¶ 1.6.)

On December 4, 2021, CCM kicked off the *CoComelon Live! JJ's Journey* ("CoComelon Live") tour in New York, triggering the beginning of CCM's four-year exclusivity period in the United States, per the License Agreement. (Am. Compl. ¶¶ 40–41.) CCM completed its initial United States tour of over 60 cities in December 2022. (*Id.* ¶ 42.)

In February 2023, Moonbug sent CCM a letter stating that because CCM had not toured CoComelon Live internationally, the international touring rights would revert to Moonbug. (Def's Opp'n at 9 (citing Doc. 87 ("Wirtschafter Decl."), Ex. S (February 27, 2023 letter from Moonbug to CCM)).) CCM disputed that these rights reverted to Moonbug. (*Id.* at 9–10 (citing Wirtschafter Decl., Ex. T (March 20, 2023 email from CCM to Moonbug)).) Moonbug then commenced a lawsuit in England, which resulted in a judicial declaration finding that "the licensed rights in respect of the CoComelon Tour granted by [Moonbug] to [CCM] under the Agreement in relation to any territory of the world other than the United States of America, Canada, and Argentina terminated and reverted to [Moonbug]." (Wirtschafter Decl., Ex. V.) Hence, the only rights in dispute in this litigation are the touring rights for the United States, Canada, and Argentina.

On June 22, 2023, Moonbug informed CCM that it would be partnering with a different company, Faculty Productions, to launch a series of marketing appearances featuring CoComelon characters titled CoComelon Party Time. (Am. Compl. ¶¶ 44, 46.) Soon after, Moonbug publicly launched CoComelon Party Time in Atlanta, Georgia, and thereafter brought CoComelon Party Time to at least nine other American cities. (*Id.* ¶¶ 47, 52.) CCM asserts that "CoComelon Party Time blatantly exceeds Moonbug's Limited Reserved Rights because it is a live ticketed show." (*Id.* ¶ 48.)

After the conclusion of the initial United States tour of CoComelon Live, Moonbug had requested that CCM rescale the show to make it less expensive, and CCM agreed, as it was in both parties' best interest to make the show profitable. (*Id.* ¶ 55; *see also* Doc. 65 ("Pl's Mem.") at 7.) CCM toured the rescaled CoComelon Live show in Argentina in July 2023 and began planning a Canadian tour to begin in Fall 2023. (Pl's Mem. at 7.)

3

On July 6, 2023, Moonbug issued a press release advising that CoComelon Party Time is set "to visit all of our friends in Canada." (Doc. 69 ("Sammataro Decl."), Ex. 15.) On July 13, 2023, CCM sent a cease-and-desist letter to Moonbug, informing them that CCM believed CoComelon Party Time infringed on CCM's exclusive rights under the License Agreement. (Sammataro Decl., Ex. 16.) Moonbug refused to cancel the Canadian tour of CoComelon Party Time. (Am. Compl. ¶ 64.) In response, CCM's Canadian touring partner, the Feldman Agency, pulled out of the Canadian CoComelon Live tour, and as a result the Canadian CoComelon Live tour was cancelled. (Id. ¶ 65.)

On August 11, 2023, CCM filed the instant lawsuit, alleging breach of contract against Moonbug and seeking "actual and compensatory damages for Moonbug's wrongdoing." (Doc. 1 at 16–17.) On January 8, 2024, Moonbug sent a letter to CCM alleging that CCM had breached the License Agreement by failing to launch another CoComelon Live show in the United States. (Am. Compl. ¶ 68.) On February 6, 2024, CCM responded, alleging that there was no breach because there was no contractual requirement for CCM to tour continuously, and stating its intent to tour CoComelon Live in the United States and Argentina in the future. (Am. Compl., Ex. 10.) Even if the failure to tour constituted a breach, CCM argued that it was entitled to suspend its performance due to Moonbug's antecedent material breach of the License Agreement. (Id.) CCM repeatedly sought information about Moonbug's touring plans for CoComelon Party Time, but Moonbug declined to meet with CCM and did not provide the requested information. (Id. ¶¶ 70–71, 73.) On July 2, 2024, the parties unsuccessfully attempted to mediate. (Id. ¶ 76.) Three days later, Moonbug sent a letter to CCM purporting to terminate the License Agreement due to CCM's breach, the failure to tour CoComelon Live. (Id.)

4

During discovery in this lawsuit, CCM found evidence that allegedly shows that Moonbug's reason for terminating the License Agreement was pretextual. (Pl's Mem. at 9.) According to CCM, discovery revealed that as early as seven months prior to Moonbug's termination letter, Moonbug had decided to terminate the Exclusive Agreement for reasons unrelated to CCM's failure to continuously tour CoComelon. (*Id.* at 10.)

On January 17, 2025, counsel for Moonbug emailed counsel for CCM stating that "Moonbug has made a business decision to move forward with the [North America] tour of CoComelon with another touring partner [Round Room] and intends to announce the tour in the next couple of weeks. . . . I want to make you aware of this development so we can discuss how to most appropriately present this to the court should [CCM] desire to seek to enjoin Moonbug." (Doc. 80, Ex. 2.) On January 20, 2025, counsel for Moonbug further elaborated that they were "willing to postpone the public announcement [of the upcoming tour] to February 10, 2025." (*Id.*) Counsel for the parties discussed a briefing schedule for a preliminary injunction or a temporary restraining order, but they were not able to reach agreement.

On February 7, 2025, Plaintiff CCM moved to preliminarily enjoin Defendant Moonbug from licensing or otherwise granting to any third parties the rights to produce, market, promote, or present a live ticketed show based on the children's animated series CoComelon in the United States, Canada, or Argentina. (Doc. 64.) On February 19, 2025, CCM filed a letter motion requesting that I convert its preliminary injunction motion into a motion for a temporary restraining order ("TRO") on the basis of Moonbug's announcement that tickets to its upcoming tour with Round Room, called *CoComelon: Sing-A-Long LIVE* ("Sing-A-Long"), would go on sale on February 21, 2025. (Doc. 80.) On February 20, 2025, Moonbug filed a letter reply seeking to be heard on the TRO application. (Doc. 81.) I held a telephonic hearing with the

5

parties on February 21, 2025 at 4:00 p.m. ("TRO Hearing") to hear argument on the application for a TRO.  (Doc. 82.)  Shortly before the hearing commenced, Moonbug submitted its opposition to CCM's motion for a preliminary injunction.  (Def's Opp'n.)  On the record at the TRO Hearing, I denied Plaintiff's motion for a temporary restraining order.  On February 28, 2025, CCM filed its reply brief in support of its motion for a preliminary injunction.  (Doc. 98 ("Pl's Reply").)

II.     **Legal Standard**

A temporary restraining order or a preliminary injunction is "an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Cf. JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (summary order) (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)).  "In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders."  *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018) (citation omitted).  In order to obtain either a preliminary injunction or TRO, "a moving party must show four elements:  (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction [or TRO] is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief."  *JBR*, 618 F. App'x at 33.

Of these factors, irreparable harm is the most important, for if there is no finding of irreparable harm, an injunction cannot issue.  *See USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1294–95 (2d Cir. 1995).  "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until

the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up).  Delay in seeking relief can undermine an assertion of irreparable harm.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) ("failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979))).  "[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (collecting cases).  "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019) (citation omitted).

### III. Discussion

As "the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders," *Mahmood*, 312 F. Supp. 3d at 421, the following discussion supplements my statements on the record at the TRO Hearing, wherein I denied the TRO application, and addresses the preliminary injunction motion.

First, I find that there was substantial delay in filing this application for a preliminary injunction, which militates against finding irreparable harm and granting the motion for an injunction.  When Moonbug premiered its CoComelon Party Time show in June 2023, which CCM alleges is a breach of the parties' exclusivity agreement, (*see* Am. Compl. ¶¶ 63–65), CCM did not seek injunctive relief.  After CCM sent a cease-and-desist letter to Moonbug regarding CoComelon Party Time on July 13, 2023, and Moonbug still refused to cancel the Canadian tour

of CoComelon Party Time, (*see id.* ¶ 64; Sammataro Decl., Ex. 16), CCM did not seek injunctive relief.

On August 11, 2023, when CCM filed its initial Complaint, (*see* Doc. 1), it did not seek or move for injunctive relief against Moonbug. (*See* Pl's Reply at 3–4 (stating that CCM "elected not to enjoin Party Time" when it filed its initial Complaint).)  On July 24, 2024, almost a year after filing its initial Complaint, CCM filed its Amended Complaint seeking equitable relief, including what amounts to an injunction "[r]einstating CCM's 'sole and exclusive' right to promote and present live ticketed CoComelon shows in the United States, Canada and Argentina" and "[p]rohibiting Moonbug from granting any of CCM's exclusive rights to third parties." (Am. Compl. ¶ 82.)  Nonetheless, CCM still did not seek a preliminary injunction or expedited review, despite seeking the very same relief that it now claims is urgent and necessary to avoid irreparable harm.

After discovery had been ongoing and Plaintiff claims to have discovered evidence revealing that Moonbug's termination of the parties' contract was pretextual, (*see* Pl's Mem. at 10–11), CCM still did not seek a preliminary injunction.  Finally, there was a three-week delay in seeking a preliminary injunction between when the news of the North America Sing-A-Long tour was explicitly disclosed by Defendant and when Plaintiff moved for a preliminary injunction.  (*See* Doc. 80, Ex. 2 (Defendant informed Plaintiff of upcoming Sing-A-Long tour on January 17, 2025).)

During oral argument and in its reply brief, Plaintiff attempts to justify the choice not to seek injunctive relief at the outset when it became aware of the CoComelon Party Time show by arguing that the upcoming Sing-A-Long tour is materially different.  In Plaintiff's telling, the difference is one of degree, as "CCM reasonably believed that . . . CoComelon Live could

8

coexist in the marketplace with Party Time, at least until this case was resolved," whereas "no coexistence is possible" with the Sing-A-Long tour because it is "indistinguishable" from CoComelon Live. (Pl's Reply at 6.) The idea that CoComelon Live and CoComelon Party Time could coexist is directly belied by Plaintiff's repeated statements that it was forced to cancel CoComelon Live's entire Canadian tour due to Party Time, and that it has not been able to tour since due to Party Time. In sum, there have been numerous inflection points, beginning in June 2023, when Plaintiff could have sought a preliminary injunction, and Plaintiff fails to cogently explain why they delayed until February 2025. This delay counsels against a finding of irreparable harm because the "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Citibank, N.A.*, 756 F.2d at 277 (quoting *Le Sportsac, Inc.*, 478 F. Supp. at 609).

Irreparable harm is defined as "injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). I find that Plaintiff has failed to show that monetary compensation would not effectively remediate its injuries. I do not find any evidence in the record supporting Plaintiff's argument that it stands to suffer unquantifiable harm such as loss of customer trust and reputational damage. Plaintiff relies on the Ticketmaster ratings for a different Round Room show called "Blippi," which average 3.8 out of 5 stars, in comparison to CoComelon Live's rating of 4.2 stars, to argue that there is reputational harm. (Pl's Mem. at 23.) Plaintiff does not establish that (1) Ticketmaster ratings are an accurate measurement of consumer satisfaction; (2) Blippi is analogous to Sing-A-Long; or (3) that the gap between a 3.8-star rating and a 4.2-star rating is material. Further, Plaintiff does not deny that "CCM is a single purpose entity whose only

business activity over the past 18 months has been this litigation," (Def's Opp'n at 1), undermining the assertion that the Sing-A-Long tour could cause irreparable harm to CCM's reputation, goodwill, and professional standing. Nor do I credit Plaintiff's argument that the 2022 CoComelon Live tour—the last time that CCM made use of Defendant's intellectual property—was so unique that it cannot provide a useful benchmark for damages calculations, especially when combined with other analogues such as the rescaled Argentina show, the CoComelon Party Time tour, and the upcoming Sing-A-Long tour. I find that monetary damages would suffice here, and thus there is no irreparable harm.

Turning to the balance of the hardships, I must consider which of the two parties would suffer most grievously if the injunction were wrongly decided. *See Goldman Sachs & Co. v. Golden Empire Schools Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (citation omitted). I find that this factor weighs in Moonbug's favor. There is no question that the ultimate right to the CoComelon intellectual property resides with Moonbug. Moonbug planned a CoComelon tour, contracted with venues and staff, and begun ticket sales. If I were to enjoin the tour now, Moonbug would suffer serious harm to its ongoing project. On the other hand, CCM has not used the CoComelon intellectual property since 2022 when the CoComelon Live tour ended, nor did they attempt to plan any tour or event relating to CoComelon in the year that elapsed between the cancellation of the Canadian tour and Moonbug's termination of the License Agreement. Any harm CCM might experience from the lack of injunctive relief is outweighed by the concrete harm that Moonbug would experience to its upcoming Sing-A-Long tour.

Next, I find that the public interest factor is neutral here. There is a "strong public interest" in enforcing valid contracts. *See Avon Co. v. Fareva Morton Grove, Inc.*, No. 22-CV-4724, 2022 WL 2208156, at *9 (S.D.N.Y. June 21, 2022) (citations omitted). *But see Smith v.*

*Newport News Shipbuilding Health Plan, Inc.*, 148 F. Supp. 2d 637, 653 (E.D. Va. 2001) ("This is a case involving contract interpretation. As such, the public interest, which is only that the parties' agreement be enforced, is neutral with respect to the issue of whether preliminary injunctive relief is appropriate."). However, Defendant sent a termination letter for the contract at issue on July 5, 2024. Plaintiff moved for injunctive relief on February 7, 2025. In the intervening seven months, Defendant has planned a new CoComelon tour, which involves entering into different contracts, hiring staff, and selling tickets to members of the public. The public interest is therefore neutral.

      As Plaintiff has not made the necessary showing on the foregoing three factors, most importantly failing to establish irreparable harm, I need not reach the issue of likelihood of success on the merits. *See, e.g.*, *Coscarelli*, 364 F. Supp. 3d at 221 ("[I]f a party fails to show irreparable harm, a court need not even address the remaining elements." (citation omitted)); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-CV-11386, 2022 WL 16707829, at *10 (S.D.N.Y. Sept. 27, 2022) ("Having concluded that [plaintiff] failed to meet its burden of demonstrating a likelihood of irreparable harm if the requested relief is denied, I need not further analyze . . . the likelihood of success on the merits." (internal quotation marks omitted)). Therefore, I do not express any view as to the merits of Plaintiff's claims.

      CCM failed to show that it would suffer irreparable harm absent injunctive relief, nor did it show that the balance of the harms weighs in favor of an injunction. CCM has thus failed to meet its burden to justify the issuance of a preliminary injunction.

## IV. <u>Conclusion</u>

Plaintiff's motion for a temporary restraining order is DENIED. Plaintiff's motion for a preliminary injunction is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 64 and 80.

SO ORDERED.

Dated:   March 28, 2025
         New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge